**Evelyn WARDENBURG, Plaintiff-Appellant,**

v.

**Marvin David WHITE, Defendant-Respondent.**

**No. 35773.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Dec. 17, 1974.

Motion for Rehearing or Transfer to Court En Banc or Transfer to Supreme Court Denied Jan. 14, 1975.

Samuel Goldblatt, William R. Kirby, St. Louis, for plaintiff-appellant.

Carter, Brinker & Doyen, John G. Doyen, Clayton, for defendant-respondent.

McMILLIAN, Judge.

Plaintiff, Evelyn Wardenburg, appeals from a judgment entered by the Circuit Court of St. Louis County, Missouri, on a jury verdict which found defendant not guilty of negligence. Her claim for personal injuries arose from an automobile collision between the car in which she was riding and the automobile being operated by defendant.

To convict the trial court of error, plaintiff contends that (1) the court wrongfully rejected her instruction which submitted a negligent failure of defendant to swerve so as to avoid the collision and (2) the court prejudiced her case by its improper conduct toward her attorney in the presence of the jury. We find no error in either regard and affirm the judgment.

The collision occurred at the intersection of Page Boulevard, an east-west thoroughfare, and Woodson Road, a north-south thoroughfare, in St. Louis County. At this intersection Page Boulevard is controlled by an electric light standard and has eight lanes of traffic—four for westbound traffic and four for eastbound traffic. Looking westwardly from Page, the furthermost south lane (next to the median) is used for left-turning southbound traffic onto Woodson Road. The other three lanes continue on westwardly; however, the curb lane could be used for right-turning northbound traffic onto Woodson Road. Facing north, Woodson also has four lanes of traffic; the westernmost lane for left-turning westbound traffic; the two center lanes for northbound traffic, and a curb lane used exclusively for right-turning eastbound traffic. On both streets each traffic lane is ten (10) feet wide.

On the day in question plaintiff was a passenger in a northbound automobile on Woodson Road being operated by her daughter. Although the daughter's speed was disputed by other witnesses, plaintiff's daughter testified that she was driving in the lane next to the curb lane at a speed of twenty miles per hour. As her car approached the intersection with Page Boulevard, the traffic control turned from green to amber. When the Wardenburg car reached the median line of Page, the traffic control turned red for northbound traffic. The collision occurred between the two vehicles in the curb lane for westbound traffic on Page. The front end of defendant's car damaged the right front door of the Wardenburg automobile.

Defendant was traveling west on Page in the curb lane. Prior to the collision he had stopped for a red light at Woodson for westbound traffic. To his immediate left (south) there was backed-up traffic in all three lanes, two for westbound traffic and one waiting to turn left southbound on Woodson Road. When the light turned green, defendant started up his car, accelerated up to 10 miles per hour and drove approximately the entire length of the easternmost lane of traffic on Woodson (estimated to have been 10 feet). According to the testimony, it was at this point that defendant first saw the Wardenburg

car at the median line of Page Boulevard, traveling at speeds given at 20–25 miles per hour, 30–35 miles per hour. Defendant also testified that the curb lane to his right on Woodson was free and clear of traffic.

In this posture of the case, plaintiff argues that the court erred in refusing to submit her instruction to the jury on defendant's failure to swerve.

Defendant counters that (1) there was no substantial evidence offered by plaintiff to show that swerving would have been effective to avoid the collision, and (2) a swerve would have been ineffective to avoid the collision.

■ The issue between the two parties being so thusly defined, we, to determine whether or not plaintiff made a submissible case, review the evidence from a viewpoint most favorable to plaintiff and give plaintiff the benefit of every reasonable inference which the evidence tends to support, Hecker v. Schwartz, 426 S.W.2d 22, 26 (Mo.1968); Commerford v. Kreitler, 462 S.W.2d 726, 728 (Mo.1971). On the other hand, we disregard defendant's evidence unless it aids plaintiff's case, Watterson v. Portas, 466 S.W.2d 129, 130 (Mo.App. 1971).

■ Unquestionably, as a part of her case, plaintiff is bound not only to show by her evidence that had defendant swerved, the collision could have been avoided, Middleman v. Complete Auto Transit, 486 S.W.2d 456, 461 (Mo.1972) but also to show, that the defendant had the means and ability to have so acted that the collision could have been avoided and that defendant had sufficient time and distance, considering the movement and speeds of the vehicles, to enable him to take effective avoidance action, Cook v. Cox, 478 S.W.2d 678, 680 (Mo.1972); Cassin v. Theodorow, 504 S.W.2d 203, 206–207 (Mo.App.1973).

Thus, the question becomes, was there substantial evidence to show that if defendant had swerved to his right, such action would have been effective so as to avoid the collision. We think not.

■ An instruction which submits failure to swerve in a primary negligence case is closely akin to a humanitarian negligence case because the duty to act in each submission only arises at the moment the defendant has either actual or constructive notice of the danger of collision, and his negligence, if any, is to be measured by his ability thereafter to avoid the collision, Greenwood v. Bridgeways, Inc., 243 S.W.2d 111 (Mo.App.1951).

■ Plaintiff's evidence made no attempt to show constructive notice of the danger of collision but she contented herself with defendant's admissions that (1) he first saw the Wardenburg car when he was about 10 feet into the intersection; (2) he operated his car at a speed of 5 to 10 miles per hour up to the point of collision; and (3) he did not swerve. Also, defendant testified that the curb lane to his right on Woodson Road was free of traffic.

Assuming that the Wardenburg car was traveling 20 miles per hour or 30 feet per second, it reached the point of impact in 1.3 seconds and taking the lowest of speeds given for defendant at 5 miles per hour or 7.5 feet per second, assuming his reaction time to be average or above average, at the time he became aware of the danger of collision before he could react he would have traveled either 5 feet (¾ths second reaction time), or 1 foot (¼th second reaction time). Here the plaintiff's evidence placed defendant's automobile approximately 10 feet into the intersection only seconds away from the point of collision. Considering the time necessary for defendant to react to the danger of collision and the distance the car traveled during that interval, defendant's automobile would be in the lane of traffic and in the path of the oncoming Wardenburg automobile before he could take any effective evasive action.

Consequently, defendant had time neither to swerve nor to take any evasive action, under the evidence produced, which would have prevented the collision. Because when his duty arose to take any evasive action, the collision was already occurring. Under the evidence presented, even a 90-degree swerve to the north by defendant would have been ineffective to avoid the collision, since defendant's automobile, after reaction time, was in the Wardenburg automobile's lane of travel.

Finally, plaintiff complains that the general conduct of the court throughout the trial betrayed a hostile feeling toward plaintiff's counsel and conveyed to the jury the idea that the court's sympathy was with the defendant.

■■ Most of the heated discussion between counsel and the court occurred out of the presence of the jury. The record reflects only two things that could have conceivably prejudiced counsel with the jury. First is counsel's accusation that the trial court made facial expressions. This assertion is supported in the record only by counsel's brief statement to indicate that the trial judge departed from the standards of proper judicial conduct. Such an accusation is not self-proving, State v. Sanders, 360 S.W.2d 722, 726 (Mo.1962).

Secondly, the record does show that the trial judge admitted that he did raise his voice near the end of an exchange when counsel insisted upon arguing with the court after the court had made a ruling. Assuming, however, that the trial judge did make facial expressions and did raise his voice as indicated, the record does not evidence hostile or prejudicial conduct of any significance, Harms v. Simkin, 322 S.W.2d 930, 938 (Mo.App.1959) and Duncan v. Pinkston, 340 S.W.2d 753, 757 (Mo. 1960).

Judgment affirmed.

SIMEONE, P. J., and GUNN, J., concur.