Herbert E. JONES, Plaintiff–Appellant,

v.

Mel R. FREESE,
Defendant–Respondent.

No. 52394.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 10, 1987.

Motion for Rehearing and/or Transfer
Denied Dec. 17, 1987.

Application to Transfer Denied
Feb. 17, 1988.

Dallas W. Cox, St. Louis, for plaintiff-appellant.

Joseph M. Kortenhof, St. Louis, for defendant-respondent.

CRANDALL, Judge.

Plaintiff, Herbert E. Jones, brought an action for bodily injury, alleging that he was struck by an automobile driven by defendant, Mel Freese. Plaintiff appeals from an adverse judgment entered pursuant to a jury verdict in favor of defendant. We reverse and remand.

In his first point, plaintiff asserts that the trial court erred in refusing to permit plaintiff's counsel to elicit testimony from defendant, during cross-examination, that he had been drinking intoxicating beverages prior to the accident. Defendant concedes that evidence of drinking is admissible "in terms of its relation to erratic driving *at the time of the collision* or in terms of its *contribution to the collision.*"

Plaintiff, as the proponent of the evidence relating to defendant's consumption of alcoholic beverages, is entitled to have the remaining evidence, and the reasonable inferences therefrom, construed in his favor on the issue of admissibility. We, therefore, summarize the facts in that manner notwithstanding the verdict in favor of defendant.

Plaintiff was a uniformed police officer who was directing traffic outside of a theatre in downtown St. Louis. He was stationed in the middle of the street between the theatre and a parking garage located directly across from the theatre. The traffic was heavy.

Defendant, who was driving north on the street, dropped off his passengers at the theatre. He then turned to enter the parking garage across the street. As a result of this turn, his car was positioned diagonally across two lanes of traffic.

Plaintiff approached defendant's automobile and told him to move on because the lot was full. Defendant retorted, "Just 'cause you're a damn cop doesn't ... always make you right." Plaintiff then moved behind defendant's automobile, turning south to face the oncoming traffic. He was standing approximately three to three and one-half feet behind defendant's automobile. He continued directing vehicular and pedestrian traffic.

Defendant backed up his automobile, striking plaintiff. Plaintiff hit the back fender of defendant's automobile with his fist as he pivoted to get out of the way of the automobile. Although he was not knocked over by the impact, he did suffer an injury to his knee.

Plaintiff immediately yelled at defendant to stop. When defendant drove on, plaintiff called to another police officer to stop defendant. The second officer also failed in his attempt to stop defendant's vehicle. Defendant turned at the next corner, running a red light as he did so. He was arrested a short time later and charged with leaving the scene of an accident and violating an electric signal. The arresting officer described defendant's demeanor as "belligerent and pretty uncooperative."

During plaintiff's case, plaintiff introduced statements from defendant's deposition. In his deposition, defendant said that he had looked into his rearview mirror before backing up but had seen nothing. He testified that, when he had heard a "thud" on the back of his car, he had checked in his rearview mirror. Seeing nothing behind him, he had driven north on the street. During cross-examination in defendant's case, he testified that he had not looked into his rearview mirror before backing up. No one else saw defendant's car actually strike plaintiff. Defendant's defense was that he did not hit plaintiff with his automobile and, therefore, did not cause injury to plaintiff's knee.

The jury returned a verdict, finding defendant zero percent at fault and plaintiff 100 percent at fault.

At trial, during cross-examination, plaintiff attempted to introduce evidence that

defendant had been drinking prior to the accident. The following colloquy occurred:

[PLAINTIFF'S COUNSEL]: Didn't you have a couple Martinis that evening?

[DEFENSE COUNSEL]: I object to that, Your Honor. This is totally improper.

\* \* \* \* \* \*

[PLAINTIFF'S COUNSEL]: His drinking is a relevant factor to what he saw and his ability to see it and he was drinking that evening.

\* \* \* \* \* \*

THE COURT: I'm going to sustain the objection to any evidence of drinking in this case unless you're prepared to offer evidence that there had been drunken driving or something to that effect.

[PLAINTIFF'S COUNSEL]: The only offer of proof I make in this regard, Your Honor—

THE COURT: Okay.

[PLAINTIFF'S COUNSEL]: —is that the—Mr. Freese had a couple of Martinis at the Evanses' house and their testimony would so indicate, their testimony at deposition so indicated, and I believe that I have layed a sufficient foundation in view of his not seeing the Officer to his rear when there was nothing to obstruct his vision, Officer Kentzinger waving him to stop and him not seeing him. I believe that's all a relevant factor and I believe it would be error in not allowing it and that's my offer of proof.

■ Numerous Missouri cases have addressed the issue of the admissibility of evidence that a driver either had been drinking or was intoxicated. *See generally Sewell v. MFA Ins. Co.,* 597 S.W.2d 284 (Mo.App.1980). Evidence of actual intoxication is admissible when coupled with evidence of negligence because it bears directly on the issue of negligence. *See Id.; see also Diener v. Mid–American Coaches, Inc.,* 378 S.W.2d 509 (Mo.1964). Evidence of mere drinking, as distinguished from intoxication, is admissible only when coupled with evidence of erratic driving. *See Cheatham v. Chantrau,* 237 Mo.App. 793, 176 S.W.2d 865 (1944); *Boehm v. St. Louis Public Service Co.,* 368 S.W.2d 361 (Mo.

1963); *Hager v. McGlynn,* 518 S.W.2d 173 (Mo.App.1974).

Missouri courts have recognized a distinction, albeit a fine one, between negligent driving and erratic driving in determining whether evidence of drinking intoxicants is properly admitted. That distinction was recognized in *Sewell,* when the court stated that the "driving, if not erratic, was at least negligent." *Sewell,* 597 S.W.2d at 290.

■ It is clear that something more than negligence is required to characterize driving as erratic. As the Missouri Supreme Court opined in *Doisy v. Edwards,* 398 S.W.2d 846 (Mo.1966):

It was not known whether defendant's faculties were impaired or not, and the only thing he [the patrolman] noted on the report of accident was that defendant had been drinking. There was no evidence that defendant's drinking had anything to do with the collision. There was no evidence showing erratic driving by defendant *or any other circumstance from which it might be inferred that defendant had an impaired physical condition at the time of the collision.*

*Id.* at 849 (emphasis added).

In the case *sub judice,* there was proffered evidence that defendant had consumed one or two martinis. The question is whether, given the facts of this case, the trial court should have admitted evidence of defendant's consumption of alcoholic beverages prior to the accident. Evidence of defendant's drinking was only admissible if his driving could be classified as erratic.

■ At the time plaintiff made his offer of proof, the evidence from defendant's deposition testimony was that he had looked into his rearview mirror before he had backed up, but that he had not seen plaintiff standing behind his automobile. Plaintiff submitted his case against defendant on lookout. In law, defendant is deemed to have seen what can be seen. *Morgan v. Toomey,* 719 S.W.2d 129, 135 (Mo.App.1986); *Lewis v. Rynkowski,* 639 S.W.2d 842, 843 (Mo.App.1982). It was still

light outside when the accident occurred. Plaintiff was standing approximately three feet directly behind defendant's automobile. The record shows nothing obstructing defendant's vision. The reasonable inference favorable to plaintiff is that defendant did not actually look behind him before backing up. This inference is supported by defendant's later contradictory testimony, although given after the offer of proof, that he had not looked into the rearview mirror before backing up his car.

In addition to defendant's failure to look or to see plaintiff, his other actions are also pertinent to a determination of whether evidence of his consumption of alcoholic beverages should be admitted for the jury's consideration. Defendant made acrimonious remarks to plaintiff when plaintiff told him the parking garage was full. He backed up on a street which was crowded with cars and people attending the theatre. There was no evidence of any warning prior to backing. When he heard a thud on the back of his automobile, he checked in his rearview mirror but saw nothing. He did not get out of his car to investigate the source of the noise. He was not aware that he had hit plaintiff. He drove off without stopping, despite two police officers' yelling at him to stop. He then made a turn against a red light at the corner.

These actions and comments of defendant were such that a jury could reasonably infer that defendant was not only negligent, but in fact, his driving abilities were impaired. His driving could therefore be classified as erratic. Because his driving was erratic, evidence that he had consumed alcoholic beverages would then be a factor for the jury to consider as a possible explanation for his erratic driving.

■ Defendant contends that plaintiff's evidence of erratic driving occurred *after* the accident and, therefore, could not have been a contributing factor to the accident. Defendant claims that his acts of running a red light and of not stopping when plaintiff and the other police officer yelled at him to stop cannot be considered evidence of erratic driving. We disagree.

Defendant's behavior prior to and immediately following the accident constituted a continuous sequence of events which related directly to the accident. His actions after the accident lent color to the conduct which caused the accident and were not so remote from the accident as to be unrelated to it. Given the facts of this case, the trial court erred in refusing to admit evidence of defendant's drinking intoxicating beverages prior to the accident.

Plaintiff's other allegations of error merit examination because they may arise again on retrial. In his second point, plaintiff contends that the trial court erred in permitting defense counsel, over objection, to argue:

> Now, maybe you and I would know better than to have any smart mouthing to a police officer at all.... but he's paid for that mistake I'll tell you because they came down on him like a ton of bricks that night.... and hauled him away to the hoosegow and threw him in a cell.... Now, the issue whether or not the officer should be able to capitalize on ·that and get something he's not entitled to....

Plaintiff claims that these remarks were made to arouse and influence the jury and to prejudice the jury against him.

■ Determination of the prejudicial effect of final argument by the trial court will not be disturbed absent an abuse of discretion. *Pfeffer v. Kerr,* 693 S.W.2d 296, 305 (Mo.App.1985). In the instant case, defense counsel's comments were designed to deflect the jury's attention away from defendant's rude remarks to plaintiff before the accident. The purpose of the closing argument was to dispel any prejudice that may have arisen against defendant as a result of the remarks preceding the accident and to focus the attention of the jury onto the actual accident. The argument was not made for the one and only purpose of influencing the jury in favor of defendant on the question of liability. *Compare Peters v. Matthews–Thomas Freight & Express Co.,* 51 S.W.2d 139, 140 (Mo.App.1932). Additionally, the comments served to bolster defendant's theory of the case; namely, that plaintiff was nev-

er struck by the automobile. Plaintiff's second point is denied.

In his third point, plaintiff alleges that the trial court erred in submitting the comparative fault instruction at the request of defendant. The instruction reads as follows:

### Instruction No. 6

You must assess a percentage of fault to plaintiff if you believe:

First, plaintiff knew, or should have known, that defendant had to back his car up in order to go northwardly on Ninth Street and

Second, plaintiff positioned himself in such a way with respect to defendant's vehicle that contact between plaintiff and the vehicle was likely and

Third, plaintiff was thereby negligent, and

Fourth, such negligence of plaintiff directly caused any damage plaintiff may have sustained.

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

Plaintiff argues that this instruction was prejudicially erroneous, in that it failed to hypothesize a negligent act on the part of plaintiff and granted to the jury a roving commission to invent a theory to find plaintiff guilty of negligence.

■ A comparative fault instruction must have substantial evidence to support it. *Finninger v. Johnson*, 692 S.W.2d 390, 394 (Mo.App.1985). In determining whether a submitted instruction is supported by sufficient evidence, the evidence must be viewed in a light most favorable to the party offering the instruction. *Id.*

■ Here, plaintiff had instructed defendant to drive on because the parking garage was full. Because of the positioning of defendant's automobile, there was no way for defendant to move forward without first backing up. In spite of that fact, plaintiff stood directly behind defend-

ant's car and faced in the opposite direction. Instruction No. 6 properly hypothesized a negligent act on the part of plaintiff. Plaintiff's third point is denied.

The judgment of the trial court is reversed and the cause is remanded.

SIMON, P.J., concurs.

GRIMM, J., dissents in separate opinion.

GRIMM, Judge, dissenting.

I respectfully dissent from the majority's holding on the first point that the trial court erred in refusing to admit evidence of Freese's drinking intoxicating beverages prior to the accident.

In *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203 (Mo. banc 1983), the Supreme Court stated that an offer of proof must (1) demonstrate to the trial court the relevancy of the testimony offered, (2) be specific, and (3) be definite. Here, Jones' attorney said that "His [Breese] drinking is a relevant factor to *what he saw* and *his ability to see* it." (emphasis added). Jones did not attempt to demonstrate the relevancy of the drinking testimony as it pertains to erratic driving. Rather, he focused his comments solely on the question of lookout (i.e., "what he saw and his ability to see it"). However, as stated in the majority opinion, "Evidence of defendant's drinking was only admissible if his driving could be classified as erratic."

In his offer of proof, Jones did not bring to the trial court's attention any evidence of erratic driving. All he said on that subject was the conclusionary statement, "Well, there's certainly some evidence of erratic driving." He did not point out to the trial court any facts to support that conclusion.

Later, during the colloquy, when the offer of proof was actually made, the basis for the offer was again, not erratic driving, but on the question of lookout. For Jones' counsel said, "I believe that I have layed a sufficient foundation in view of his not seeing the officer to the rear [Jones] when there was nothing to obstruct his vision, Officer Kentzinger waving him to stop and

him not seeing him." In my judgment, the entire offer of proof was directed towards linking the drinking with failure to keep a lookout and the offer of proof did not concern itself with erratic driving. As such, the offer of proof never established the relevancy of the testimony offered.

A trial court is granted broad discretion in admitting or rejecting evidence on relevancy grounds. *Moreland v. State Farm Fire and Casualty Company*, 662 S.W.2d 556 (Mo.App.S.D.1983). And unless there was an abuse of that discretion, its action will not be grounds for reversal. *Karashin* at 205.

An appellant should be held to his offer of proof when the trial court sustains an objection, just as appellate courts hold other litigants to the objection made to evidence at the trial court. *Sorrell v. Hudson*, 335 S.W.2d 1 (Mo.Div. 2 1960).

Based on the offer of proof, and the stated reasons for its admissibility, I do not find that the trial court abused its discretion in refusing to admit evidence of Freese's drinking.

I concur in the majority opinion as to points II and III. Accordingly, I would affirm the judgment of the trial court.